United States Courts
Southern District of Texas
FILED

JUN 07 2017

David J. Bradley, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ERICA JAMES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. ____________** |
| | § | |
| **HEARST NEWSPAPERS, LLC. and HOUSTON CHRONICLE,** | § | **JURY DEMANDED** |
| | § | |
| **Defendants,** | § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

**NOW COMES,** Erica James ("Plaintiff"), files this Original Complaint against Hearst Newspapers, LLC. and the Houston Chronicle ("HEARST/CHRONICLE" or collectively referred to as "Defendants") and for cause of action would show the following:

## I.
## PARTIES

1. Plaintiff, Erica James, is an individual residing in Houston, Texas, Harris County, Texas. Plaintiff is a citizen of the United States and the State of Texas.

2. Defendant HEARST NEWSPAPERS, LLC. Inc. is a Foreign Limited Liability Company and may be served with process through its registered agent, CT Corporation System., 1999 Bryan St., Ste. 900, Dallas, Texas 75201, via certified mail, return receipt requested.

3. Defendant HOUSTON CHRONICLE, is a Foreign Limited Liability Company and may be served with process through its registered agent, CT Corporation System, 1999 Bryan St., Ste.

900, Dallas, Texas 75201, via certified mail, return receipt requested.

## II.
## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under federal statutes: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

4. Venue is proper in the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(a) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## III.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On June 14, 2016, Plaintiff filed a charge of discrimination based on race, gender discrimination and retaliation with the U.S. Equal Employment Opportunity Commission; Charge No. 460-2016-03338. Subsequently, on March 10, 2017, the U.S. Equal Employment Opportunity Commission ("EEOC") issued Plaintiff her Notice of Right Sue. *See* Exhibit A. Plaintiff files this lawsuit within ninety (90) days of receiving her Notice of Right to Sue and her lawsuit is, therefore, timely filed.

## IV.
## BACKGROUND AND FACTS

6. Erica James was employed by Defendants as a Inside Sales Representative from June 2014 until her termination date on February 3, 2016. Ms. James was hired along with three (3) other employees, including a white male, a black male, and a middle-eastern male.

7. As part of the inside sales team, Ms. James sold advertisements to companies ranging

from sole proprietorships to mid-sized companies. In pursuit of reaching sales goals, each employee was provided a "book of business". Ms. James' soon realized that the book of business she was assigned was identical to Jeremy Bunnell (a white male) book, so they were tasked with calling the same businesses. Despite her best efforts, Mr. Bunnell would get most of the business because management would go out of its way to assist Mr. Bunnell to acquire deals but wholly fail to give Ms. James any assistance—though she was a new hire. Ms. James was then ridiculed for not meeting quota. It was evident to Ms. James, as the only woman and African American that she was being treated differently.

8. In or around November 2014, Ms. James filed her first complaint of discrimination with Human Resources against manager, Anthony Purkiss, for race and gender discrimination. Within the complaint, she outlined how Mr. Purkiss stripped business accounts from black employees, including herself, and assigned those accounts to white employees. Rather than taking prompt remedial action, as required by law, the Chronicle asked Mr. Purkiss to simply apologize to Ms. James—but no disciplinary action was taken against Mr. Purkiss. In fact, Mr. Purkiss's sham apology did nothing to remedy the discrimination and hostile work environment experienced by Ms. James at the Chronicle. Further, Mr. Purkiss retaliated against Ms. James by failing to promote her and continuing to strip accounts from her to later justify the bogus disciplinary action that was subsequently taken against Ms. James.

9. Routinely, white male employees were promoted at a higher rate than black employees at the Chronicle. This is evident by the utter lack of African Americans in executive positions at the Chronicle—aside from Kent Daney (Human Resources) who commented to Ms. James that "the Chronicle only hired [him] to add some color to the executive team"—because the

Chronicle did not have any "people of color" at the executive level. Notably, the Chronicle does not have a policy or growth plan in place for its employees allowing for management to subjectively select white male candidates over minorities and women who were equally, or often more qualified, than their white, male counterparts. Moreover, it is also interesting to see how the four (4) people in Ms. James hiring class performed at The Chronicle. Specifically, of the four employees hired: the black male – *resigned*; the middle-eastern male – *terminated* within one (1) month and was subject to discrimination; Ms. James – *terminated*; but, the white male – *employed,* meeting goals with the assistance of management and promoted. Similarly to two female employees at the Chronicle, Ashleigh Rapp and Cynthia Latour also were accused of not meeting quota and ultimately resigned.

10. In January 2016, Ms. James applied to a corporate recruiting position because of her years of experience and skill set fit the position. Ms. James told management and HR that she was interested in the position. Defendants conducted a sham interview to appease Ms. James with no true intention to promote her. In fact, the Chronicle terminated her employment the day after the interview. Notably, Andrew Bunnell (Jeremy Bunnell's brother) was hired into the company and placed on the inside sales team. He was given his brother's book of business to ensure that he would make quota. At the same time, Ms. James was constantly being denied promotions and having accounts taken from her and given to white males. For example, the United States Census Bureau and Olin Company accounts were taken from Ms. James and given to white males—and, to add insult to injury, those accounts were given to white males that were not on her team. It was evident that Defendants were setting Ms. James up for failure.

11. In or around November 2014, Ms. James made another complaint to Rob Cravatis (Executive VP of Sales) about bonuses and why she was not making sales. In the summer of 2015, Ms. James made yet another complaint to Human Resources, Kent Daney, of race discrimination and about the 'stripping of her business accounts.' Again, in October 2015, Ms. James filed an additional complaint to Human Resources regarding gender discrimination.

12. Shortly after making several complaints to HR, Ms. James was given a written warning for allegedly not making sales goals. She was required to have weekly meetings with her manger but no real help was ever given to her to assist in meeting quota. Ms. James constantly requested additional training to reach her goals but was wholly denied training or assistance. It is important to note there was no progressive disciplinary plan at the Chronicle, but Ms. James was given this unwarranted write up. It is evident that Ms. James was only written up because of her complaints to management and to Human Resources. Further, at the time that Ms. James was given a written warning, she had collected $61,000 in additional sales over the prior year and was on target to meet her goal – indicating a good faith effort by Ms. James to reach quota. However, despite her best efforts, Ms. James was later terminated on February 3, 2016.

## V.
## COUNT 1: TITLE VII RACE DISCRIMINATION

13. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

14. Defendants intentionally engaged in unlawful employment practices involving Plaintiff because of her race (African-American).

15. Defendants discriminated against Plaintiff in connection with the compensation, terms,

conditions, and privileges of employment, or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's race (African-American) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

## VI.
## COUNT 2: § 1981 RACE DISCRIMINATION

16. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

17. Defendants intentionally engaged in unlawful discriminatory practices against Plaintiff because of her race (African-American).

18. Defendants discriminated against Plaintiff in connection with the making, performance, modification, and termination, and the enjoyment of all benefits, privileges, terms, and conditions of the employment relationship because of her race (African-American) in violation of 42 U.S.C. § 1981.

## VII.
## COUNT 3: TCHRA RACE DISCRIMINATION

19. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

20. Defendants intentionally engaged in unlawful employment practices involving Plaintiff because of her race (African-American).

21. Defendants discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely

affect her status because of Plaintiff's race (African-American) in violation of Texas Labor Code § 21.051.

## VIII.
## COUNT 4: GENDER (SEX) DISCRIMINATION

22. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

23. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is of the female sex. *See* 42 U.S.C 2000e(f).

24. Defendants is an employer within the meaning of Title VII. *See* 42 U.S.C. § 2000e(b).

25. Defendants intentionally engaged in unlawful employment practices against Plaintiff on the basis of her gender (sex) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

26. Defendants discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of an employment opportunity or adversely affect her status because of Plaintiff's gender (sex) in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(2).

27. Defendants discriminated against Plaintiff in the form of discrimination and termination based on her gender (sex).

## IX.
## RETALIATION

28. Plaintiff incorporates by reference all of the foregoing allegations in each of the

paragraphs above as if fully set forth herein.

29.     Defendants have retaliated against Plaintiff in violation of Title VII by taking adverse employment actions against her after she made numerous complaints to management and Human Resource during her tenure at Chronicle. 42 U.S.C. § 2000e-3(a).

## VII.
## DAMAGES

30.     Plaintiff sustained damages as a result of the actions and/or omissions of Defendant described herein. Accordingly, Plaintiff is entitled to an award of actual, compensatory damages and/or liquidated damages, including lost wages and benefits in the past and future, in an amount within the jurisdictional limits of the Court.

## VIII.
## JURY DEMAND

31.     Plaintiff demands a jury on all issues to be tried in this matter and herein submits the jury fee.

## IX.
## PRAYER

32.     For the reasons set forth above, Plaintiff, Erica James respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; attorneys fees, costs of court and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

Erica James, Pro Se
4126 Howcher
Houston, Texas 77047
(832) 816-8544
ericajjames@gmail.com

# Exhibit "A"

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: **Erica James**
**12400 Shadow Creek Parkway**
**Pearland, TX 77584**

From: **Houston District Office**
**Mickey Leland Building**
**1919 Smith Street, 7th Floor**
**Houston, TX 77002**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 460-2016-03338 | Elaine White, Investigator | (713) 651-4975 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Marina Guerra (signature)

MAR 10 2017
*(Date Mailed)*

Enclosures(s)

Rayford O. Irvin,
District Director

cc:

Carl G. Guida
General Counsel
HOUSTON CHRONICLE
300 West 57th Street, 40th Floor
New York, NY 10019

Alfonso Kennard, Esq.
KENNARD ATTORNEYS AT LAW
2603 Augusta Dr., 14rh Floor
Houston, TX 77057

Lowell Keig, Executive Director
Texas Workforce Comm - Civil Rights Division
101 East 15th St., Room 144T
Austin, TX 78778-0001

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

### PRIVATE SUIT RIGHTS -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.** Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 – in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA<br>[X] EEOC | 460-2016-03338 |

Texas Workforce Commission Civil Rights Division and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Erica James | 832-816-8544 | 01-25-1977 |

| Street Address | City, State and ZIP Code |
|---|---|
| 12400 Shadow Creek Parkway #2701 | Pearland, Texas 77584 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| The Houston Chronicle | 50+ | |

| Street Address | City, State and ZIP Code |
|---|---|
| 4747 Southwest Freeway Houston, Texas 77027 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Hearst Corporation | 2000+ | |

| Street Address | City, State and ZIP Code |
|---|---|
| 300 West 57th Street New York, New York 10019 | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[X] RACE [ ] COLOR [X] SEX [ ] RELIGION [ ] NATIONAL ORIGIN
[X] RETALIATION [ ] AGE [ ] DISABILITY [ ] OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| 11/2014 | 12/2015 |

[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began working for the Chronicle in June 2014 as an inside sales representative. I was hired along with three (3) other employees, including a white male, a black male, and a middle-eastern male. Among the new hires, I was the only woman. Notably, the middle-eastern man was terminated after approximately one month because he was allegedly was not meeting sales goals; and, the black man subsequently resigned because of the racially hostile environment at the Chronicle.

As part of the inside sales team, I sold advertisements to companies ranging from sole proprietorships to mid-sized companies. In pursuit of reaching sales goals, each employee was provided a "book of business". I soon realized that the book of business I was assigned was identical to Jeremy Bunnell (a white male) book, so we were tasked with calling the same businesses. Despite my best efforts, Mr. Bunnell would get most of the business because management would go out of its way to assist Mr. Bunnell to acquire deals but wholly fail to give me any assistance—though I was a new hire. I was then ridiculed for not meeting quota.

In or around November 2014, I filed my first complaint of discrimination with Human Resources against manager, Anthony Purkiss, for race and gender discrimination. Within the complaint, I outlined how Mr. Purkiss stripped business accounts from black employees, including myself, and assigned those accounts to white employees. Rather than taking prompt remedial action, as required by law, the Chronicle asked Mr. Purkiss to simply apologize to me—but no disciplinary action was taken against Mr. Purkiss. In fact, Mr. Purkiss's sham apology did nothing to remedy the discrimination and hostile work environment I experienced at the Chronicle. Further, Mr. Purkiss retaliated against me by failing to promote me and continuing to strip accounts from me to later justify the bogus disciplinary action that was subsequently taken against me.

Routinely, white male employees were promoted at a higher rate than black employees at the Chronicle. This is evident by the utter lack of African Americans in executive positions at the Chronicle—aside from Ken Daney (Human Resources) who commented to me that "the Chronicle only hired [him] to add some color to the

executive team"—because the Chronicle did not have any "people of color" at the executive level. Notably, the Chronicle does not have a policy or growth plan in place for its employees allowing for management to subjectively select white male candidates over minorities and women who were equally, or often more qualified, than their white, male counterparts. Moreover, it is also interesting to see how the four (4) people in my hiring class performed at The Chronicle. Specifically, of the four employees hired: the black male – *resigned*; the middle-eastern male – *terminated* within one (1) month and was subject to discrimination; myself – *terminated*; but, the white male – *employed*, meeting goals with the assistance of management and promoted. Similarly, to two female employees at the Chronicle, Ashleigh Rapp and Cynthia Latour also were accused of not meeting quota and ultimately resigned. It seems to be a pattern at the Chronicle—if you are a minority or a woman you can not succeed while white, males are constantly promoted.

In January 2016, I applied to a corporate recruiting position because my skill set fit the position. I told management and HR that I was interested in the position. The Chronicle conducted a sham interview to appease me with no true intention to promote me. In fact, the Chronicle terminated my employment the day after the interview. Notably, Andrew Bunnell (Jeremy Bunnell's brother) was hired into the company and placed on the inside sales team. He was given his brother's book of business to ensure that he would make quota. At the same time, I was constantly being denied promotions and having accounts taken from me and given to white males. For example, the United States Census Bureau and Olin Company accounts were taken from me and given to white males—and, to add insult to injury, those accounts were given to white males that were not on her team. It was evident that the Chronicle was setting me up for failure.

In or around November 2014, I made another complaint to Rob Cravatis (Executive VP of Sales) about bonuses and why I was not making sales. In the summer of 2015, I made yet another complaint to Human Resources, Ken Daney, of race discrimination and about the 'stripping of my business accounts.' Again, in October 2015, I filed an additional complaint to Human Resources regarding gender discrimination.

Shortly after making several complaints to HR, I was given a written warning for allegedly not making sales goals I was required to have weekly meetings with my manger but no real help was ever given to me to assist in meeting quota. I constantly requested additional training to reach my goals but was wholly denied training or assistance. It is important to note there was no progressive disciplinary plan at the Chronicle, but I was given this unwarranted write up. It is evident that I was only written up because of her complaints to management and to Human Resources. Further, at the time that I was given a written warning, I had collected $61,000 in additional sales over the prior year and was on target to meet my goal – indicating a good faith effort to reach quota. However, despite my best efforts, I was later terminated on February 3, 2016.

I strongly believe the disciplinary action taken against me, and my subsequent termination of employment, was the direct result of discrimination of my race (African American), my sex/gender and retaliation after engaging in protected activity, a violation of 42 USC Section 1981, Title VII of the Civil Rights Act of 1964, as amended, and Chapter 21 of the Texas Labor Code."

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

Cinthia M. Ibarra

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

6/13/2016 [signature]

*Date* *Charging Party Signature*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

CINTHIA M. IBARRA
Notary Public, State of Texas
My Commission Expires
October 06, 2019